EXE'RS OF SHOBE v. MORRIS.

The judgment of the Circuit Court will not be reversed on the ground that the verdict was against the evidence, unless it clearly appears that the evidence did not warrant the finding of the jury.(See Singleton v Mann. 3. Mo. R. p. 464. Oldham v Henderson 4. Mo. R. p. 295. Martin v Withington ib. p. 518. Mulliken v Greer, 5. Mo. R. p. 489. Steel v McCutchen, ib. p. 522. Vaughn v Montgomery, ib. p. 529.)

Ex's of Shobe
v.
Morris.

### Bates for defendant.

It is submitted that the motion for a new trial was erroneously refused.

### Campbell for Appellee.

1st. The weight of testimony as preserved on the record is decidedly in favor of the verdict of the jury.

2. Two juries after full and fair trial upon the merits having given a verdict in favor of the claim of said Morris for sums of which the verdict now appealed from is the smallest, and both the county court and circuit court having refused to grant new trials, this court cannot now legally grant a new trial unless there appear upon the record the most manifest error, or flagrant injustice in verdict.

3. There is no such injustice in the verdict in this cause as would justify this court to invade the province of the jury. Mo. Dec. vol. 1, page 464.

### Geyer, on the same side.

1. The circuit court could not lawfully grant a new trial to the appellants, one new trial having before been granted to the same party, it not appearing that the jury erred in a matter of law, or was guilty of misbehavior.

2. The verdict rendered is not against the weight of evidence; on the contrary, the services are established by the evidence on both sides—the only difference being in the estimate of the value of those services, and the weight of evidence would entitle the appellee to a larger amount than the sum found by the jury.

3. Though the Supreme Court will reverse the decisions of the circuit court in granting or refusing a new trial, it will reverse them only where it manifestly appears that the court below exercised its discretion unsoundly, McKnight

and Brady v. Wells 1 Mo. R. 14. Singleton v. Mar, 3d do. 464. Oldham v. Henderson, 4 do. 295. Martin v. Withington, ib. 518. Mulliken v. Greer, 5 do. 489. Neel v. McCutchen, ib. 522–3. J. R. 170, 271. Graham on new trials 380.

*Opinion of the court by Tompkins Judge.*

Morris the appellee filed in the county court of St. Charles county an account against the estate of the deceased, Abraham Shobe, and obtained there a judgment for $1915. The executors moved for a new trial, and their motion being over ruled, they appealed to the circuit court of that county. In the circuit court Morris obtained a judgment for $1373. The executors again moved for a new trial, and their motion being over ruled, they appealed to this court.

The bill of exceptions shows the account filed by Morris in the county court against the estate. It was for services rendered to the deceased in his life time, beginning on the 9th day September 1830, and ending on the 10th day of April 1836, (deducting five months in the year 1831,) in attending to the business of the deceased, and in taking care of his son Jesse. For these services the plaintiff Morris charged the sum of $1915. There was also an item in the account of $25 for a gun.

George Barns, a witness for Morris, stated that sometime in the month of February 1836, he was at the house of the deceased, and having had a previous acquaintance of 5 or 6 years with Morris, he enquired of Mr. Shobe, since deceased, in what capacity Morris was there: that Mr. Shobe said he mended gates, ploughs, &c., and said that he had a great deal of such work to do, and among the rest he attended to his son Jesse; that he had more influence over Jesse than any other person had; that Ned was a good fellow, and he would pay him well: that Jesse Shobe seemed to be deranged in his mind and subject to violent excitement; that he took offence at some remark of the witness, and was several times in the night noisy and violent: that Morris was a carpenter; the witness had known him 5 or 6 years, and that he was formely employed in making shingles, and in hewing;

that the witness saw him engaged in some such work at Mr. Shobe's.

Wm. Palk, another of Morris' witnesses stated, that in the spring of the year 1833, he commenced practice as family physician in Mr. Shobe's family, and that he was at the house of Mr. Shobe about twice in each week till the death of Mrs. Shobe, and that sometimes he was there once in each day for near a month; that Mrs. Shobe died in 1834 or 5. After her death, he lived more than a year in Mr. Shobe's family; that when he was first there, he found Morris there as one of the family, and that he continued there till the spring of 1836; that he was repeatedly told by Mrs. Shobe, and by Mr. Shobe, that the business of Morris was *to take care of Jesse Shobe; that Jesse Shobe was the son of the deceased and aged about forty years;* that he was subject to violent epileptic fits, which came on him sometimes monthly, sometimes weekly, and sometimes daily, and by night as well as by day, whenever he was much excited, or had eaten too freely; that he was deficient in memory, and *"non compos mentis;"* that he was in such a condition as to require a *constant* keeper to watch him, and that persons who were well acquainted with him could frequently see when the fits were about to come on, and by taking him out, and amusing and exercing him, the fits could sometimes be kept off; that there was during the fits a great rush of blood to the head, and he required frequent bleeding; that he was an able bodied man, and in other respects healthy enough; but that his life would have been endangered if he had not been constantly watched; that Morris attended him, and watched him, and when at home slept with him for the purpose of taking care of him, understood his case well, could bleed well, and knew how to prevent the fits when they were likely to come on; that Jesse Shobe was much attached to Morris, and that Morris had more influence over him than any other person; that Morris frequently took him out to hunt to exercise him and divert his mind; that he frequently did this of his own accord, and sometimes at the request of the deceased; that Morris was a first rate nurse, and his services were rated very highly by Mr. Shobe.— This witness also testified that Morris was much employed

in other business of the deceased, as in attending to his stock, and doing many other things which it is perhaps needless to enumerate.

Mrs. Tatum, another witness for Morris, stated that in 1830, she became acquainted in the family of the deceased, and that Morris was there at that time; that in 1831 she went to live in the family of the deceased, and continued there till 1834, and speaks of the services rendered by Morris in such terms as the last witness had done; that in the spring of the year 1832, Morris was preparing to join Capt. Boon's company of rangers; that she heard the deceased request him not to do so; and he said that he would give him more than he could get by going with the rangers; that she never knew the deceased to give Morris any money, nor Morris to receive any thing, except some few articles of clothing furnished him by Mrs. Shobe. Ira Tatum testified that he was a neighbor to the deceased; that he had known Morris to be at the house of the deceased, but did not know how he was employed there; that he had employed Morris to assist him in building a steam mill; that Morris was a good workman in wood; that this witness gave him one dollar and fifty cents per day and found him, (his boarding perhaps;) that he was well satisfied with Morris's services at that price; that another person had afterwards employed him at one dollar and twenty-five cents per day and found him. Morris was employed by these persons after he left the house of the deceased in 1836.

Several witnesses produced on the part of the defendants, appellants here, testified as to the manner of life that Morris led at the house of the deceased, Abraham Shobe; they stated that he seemed to have no particular employment, that he kept his horse and gun, and amused himself as he pleased; that the deceased was a wealthy man owning many slaves, two of which were good at working wood and iron, and that several of them had influence over the diseased son Jesse Shobe, and understood very well how to treat him in his disordered state of health. These witnesses thought that the services of Morris in the family of the deceased were not worth more than his boarding and lodging in the house

of the same. A grand son of the deceased stated that in

the spring of the year 1834, he went to live with his grandfather to attend to his business, and sometimes went to school; that he slept in the same room with Jesse Shobe, and that Morris when there slept with him Jesse; that Morris told him that the deceased gave him twenty-four dollars to buy a gun.

Another grandson of the deceased testified that in the spring of the year 1836, he, at the request of the deceased, went to live with him in order to attend to his business. That in April of that year, Morris left the house of the deceased; that the deceased becoming very feeble left his own residence in October of that year, and went to the house of his daughter in Gasconade county, where he died early the next year; and that the time of the departure of the deceased from his own residence was generally known in the neighborhood. Another witness on the part of the defendants stated that he had seen Morris at work at Shobe's place; that Morris was frequently hunting and riding about, and sometimes with Jesse Shobe; that when the deceased left his own place of residence in 1836, it was generally understood that he would never return, he being very infirm; that he was in company with Morris, and remarked to him that it was generally reported in the neighborhood that he, Morris, was to get $250 per year from Mr. Shobe; that Morris replied it was not so, that there was no such contract between them, and that he would be well contented to get that sum.

The reasons assigned for a new trial are, that, 1st, The verdict is against law; 2d, against evidence; 3d, without sufficient evidence; 4th, that the amount allowed is excessive. No instructions asked or given are complained of, and whether a new trial is to be granted is to be determined altogether by the weight of evidence. The only evidence of a contract betwixt the deceased and the appellee Morris, is the declaration of Mrs. Tatum that in the summer of the year 1832, when Morris intended to join Capt. Boon's company of rangers, she heard the deceased request him not to do it, and say that he would give him more than he could make by going with the rangers. That a very different va-

SEPT. TERM.
1840.

Ex's of Shobe
v.
Morris.

lue should be fixed on the services of an individual employed as Morris was, in the family of the deceased, is not strange; and for that reason this court ought not lightly to disturb a verdict, which to say the least, has the sanction of two juries; and which, two courts, after hearing the testimony, each refused to set aside, and to grant the appellants a new trial. This court sees nothing but the written evidence of the case. Two of the witnesses on the part of Morris lived in the family of the deceased whilst Morris was employed there. The opportunities of these persons to acquire information of the value of Morris' services, as well as of the value set on them by the deceased was good, and their character for veracity is not impeached. Those two witnesses rated the services of Morris to the family of the deceased very highly, and they also declare that the deceased placed a high value on them. The testimony of Ira Tatum is calculated to give a very favorable opinion of the character of Morris, as well as of the value of the services that such a person might have rendered on the farm of a wealthy farmer, such as the deceased appears to have been. It will be recollected that Tatum employed Morris, soon after he left the family of the deceased, to assist in building a steam mill at one dollar and fifty cents per day, and found him; that Tatum said he was well satisfied with the services of Morris at that price, and found him to be an industrious man; that during the following winter, Morris was employed on the same mill, by the mill-wright, at one dollar and twenty-five cents per day, and that his *labor was satisfactory to the mill-wright.* It does not seem probable that a man who had passed six years of his life in so idle a manner, as some of the witnesses think Morris did at the house of the deceased, could suddenly become so laborious and correct in his habits as to give satisfaction to one who employed him at the rate of one dollar and fifty cents per day in very heavy work. The presumption, then, it seems to me, ought to arise that Morris had not passed six years at the house of the deceased, next before he was employed by Tatum on the mill, in the indulgence of idle habits. Much deference has always been shown by this court to the verdict of a jury

The judgment of the circuit court will not be reversed on the ground that the verdict was against the evidence unless it clealy appears that the evidence did not warrant the finding of the jury, (see Singleton v. Mann, 3 Mo. R.p. 464. Oldham v. Henderson, 4 Mo. R. p. 295. Martin v. Withington, ib p. 518. Mulliken v. Greer 5 Mo. R. p. 489. Steel v. McCutchen, ib. p. 522. Vaughn v. Montgomery, ib p. 529.

on questions of new trials. But in the present case there have been two verdicts for the plaintiff, Morris, one of the jury in the county court, the other of a jury in the circuit court; and each of those courts refused the appellants a new trial. Those courts too, hearing and seeing the witnesses deliver their evidence, had many advantages over this court in forming a correct estimate of the weight of evidence on each side of the question. Then as the jury did not find the verdict contrary to any instructions of the court before which the cause was tried, and as it does plainly appear to me, that the evidence would not warrant the finding, it is my opinion that the judgment of the circuit court ought to be affirmed, and that being the opinion of the other judges of this court, it is accordingly affirmed.